**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO CHAIDEZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, MICROSOFT CORPORATION, and NUANCE COMMUNICATIONS, INC.,<br><br>    Defendants. | Case No. 2:22-cv-6986<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Alfredo Chaidez ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.      Defendant JPMorgan Chase Bank, National Association ("Chase Bank") (a subsidiary of Defendant JPMorgan Chase & Co.) has integrated a voice biometric security solution provided by Defendant Nuance Communications, Inc. ("Nuance") (a subsidiary of Defendant Microsoft Corporation), called Gatekeeper, to detect and protect against instances of banking fraud.[1]

2.      Nuance's Gatekeeper technology is used by numerous entities, including Chase Bank, to monitor channels for voice-based interactions.

3.      Chase Bank utilizes Gatekeeper to monitor the telephone lines that its customers in California and across the nation call to, among other things, receive support ("Contact Center").

4.      In a matter of seconds, Gatekeeper authenticates customers without prompting them to enter passwords or PINs, recite specific phrases or statements, or match the pitch, timbre, or rhythm of prior recordings of their speech.  Rather, Gatekeeper analyzes callers' environments, their behavior, and other factors to passively authenticate them as they speak on the phone with the Contact Center.[2]  Gatekeeper, in so doing, recognizes speakers and/or their speech, pinpoints identity

---

[1] https://www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/infographic/ig-effortless-voice-auth%20jpmc-en-us.pdf

[2] *Id.*

mismatches, and flags instances in which known fraudsters may be calling the Contact Center, all without requesting or requiring callers' knowing cooperation.[3]

5.    Critically, the Chase Bank Contact Center's implementation of Gatekeeper records and examines customers' voice prints and/or other voice stress patterns to ascertain the truth or falsity of statements that they make.  For example, the Contact Center utilizes Gatekeeper to assess statements made by customers as to establish their identity (*i.e.*, stating that it is they who are the one calling), thus verifying users.

6.    Defendants never procured the express consent—written or otherwise—of any person who interacted with Chase Bank's Contact Center, prior to recording and examining Californian's voice prints and/or other voice stress patterns.

7.    Through their use of Gatekeeper, therefore, Defendants Chase Bank and Microsoft Corporation have failed to comply with numerous provisions of of the California Invasion of Privacy Act ("CIPA"), including CIPA §§ 631, 632, and 637.3.

8.    Plaintiff brings this action to prevent Defendants from further violating the privacy rights of California residents, and to recover statutory damages for Defendants' having recorded and examined individuals' voice prints and/or other voice stress patterns without pursuing express written consent, in contravention of CIPA.

## PARTIES

9.    Plaintiff Alfredo Chaidez resides in Los Angeles and has an intent to remain there, and he is therefore a citizen of California.  Mr. Chaidez was in California when he called the Contact Center.

---

[3] *Id.*

10.     Defendant Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business located at 1 Microsoft Way, Redmond, Washington 98052.  Microsoft does business throughout California and the entirety of the United States.

11.     Nuance Communications, Inc. is a subsidiary of Microsoft and vendor of voice recognition technologies.  Nuance provides a voice biometric security solution called "Gatekeeper," which is at issue here and described more fully below.

12.     At all relevant times, JPMorgan Chase Bank, National Association has utilized the "Gatekeeper" product in its Contact Center.

13.     Defendant JPMorgan Chase & Co. ("JPMorgan") is a Delaware corporation with its principal place of business at 270 Park Avenue, 39th Floor, New York, New York 10017.

14.     Defendant JPMorgan Chase Bank, National Association is a banking subsidiary of Defendant JPMorgan Chase & Co. with its principal place of business at 270 Park Avenue, New York, New York 10017.  Chase Bank does business throughout California and the entirety of the United States.  Chase Bank owns and operates the Contact Center.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

16.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the laws and benefits of doing business in California, and Plaintiff's claims arise out of each of the Defendants'

forum-related activities.  Further, Plaintiff called Chase Bank's Contact Center in California, and Plaintiff's voiceprint biometrics and the content of Plaintiff's communications with Chase Bank were collected in California.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### I.    The California Invasion Of Privacy Act

18.    The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

19.    As part of CIPA, the California Legislature introduced § 631(a), which prohibits any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," (ii) "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use … any information so obtained."  CIPA § 631(a) also penalizes those who "aids, agrees with, employs, or conspires with any person" who conducts the aforementioned wiretapping.

20.    The California Legislature also enacted CIPA § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a

confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

21.    Finally, the California Legislature enacted CIPA § 637.3, which prohibits any person or entity from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation."

22.    Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).  Individuals may bring an action against the violator of CIPA § 637.3 for actual damages or $1,000, whichever is greater.  Cal. Penal Code § 637.3(c).

## II.    Defendants Violate The California Invasion Of Privacy Act

23.    Gatekeeper is a "[b]iometric authentication and intelligent fraud detection"[4] tool that "delivers authentication and fraud prevention in every voice and digital channel: live agent calls, IVRs [(interactive voice response automated telephone systems)], messaging, mobile and web apps, and even connected devices like smart TVs."[5]

24.    Gatekeeper integrates with a number of "Contact Center as a Service providers including FIve9 and Amazon Connect,"[6] and it has been deployed by the contact centers of numerous clients, including that of Chase Bank.[7]

---

[4] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[5] https://www.nuance.com/omni-channel-customer-engagement/authentication-and-fraud-prevention/gatekeeper.html

[6] *Id.*

[7] https://www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/infographic/ig-effortless-voice-auth%20jpmc-en-us.pdf

25.    Gatekeeper utilizes "[d]eep neural networks" that "analyze biometric, non-biometric, and other available data to make intelligent authentication and fraud risk assessments."[8]    In part, it "[a]nalyze[s] a person's unique voice signature, including physical and speech delivery factors,"[9] as well as " how a person uses language, including word choice, grammar, emojis, and acronyms."[10]



26.    Gatekeeper further notes it "analyzes how a person sounds, how they talk or type, and how they behave, while checking their device, network, location, and other factors for signs of fraud."[11]

27.    Gatekeeper then compares such data "with profiles of legitimate users to detect abnormal behavior."[12]

28.    Gatekeeper collects and considers the unique voiceprint of the person behind the call to "[a]uthenticate customers based on the distinct characteristics of

---

[8] https://www.nuance.com/omni-channel-customer-engagement/authentication-and-fraud-prevention/gatekeeper.html

[9] *Id.*

[10] *Id.*

[11] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[12] *Id.*

their voice, regardless of age or language"[13] and ascertain the truth or falsity of statements that consumers make.

29.    Creating a voice print requires extracting an individual's phonetic features (including their unique speech patterns and characteristics) from their voice. As such, a voice print serves as an audible "fingerprint" which can directly identify an individual and can even reveal the speaker's behavioral traits.

30.    Gatekeeper does so "passively,"[14] requiring "[n]o passwords, [an]d no effort"[15] to be inputted by those who are subject to its use.  Instead, its functions may be fulfilled surreptitiously, "[d]uring the first few seconds of normal conversation,"[16] and without callers' knowledge or consent to Nuance's or Microsoft's inclusion in their conversations.

31.    Nuance purports that it takes Gatekeeper "<1 sec audio to authenticate" users, as opposed to "57 sec+ with other authentication methods,"[17] while achieving "99% authentication success" and "90% detection of fraudsters in 15 seconds or less."[18]

32.    When Gatekeeper is used on a telephone conversation, it is not like a tape recorder or a "tool" used by one party to record the other.  Instead, Gatekeeper involves Nuance and Microsoft—separate and distinct third-party entities from the parties to the conversation—using Gatekeeper to eavesdrop upon, record, extra data

---

[13] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[14] https://www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/infographic/ig-effortless-voice-auth%20jpmc-en-us.pdf

[15] *Id.*

[16] *Id.*

[17] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[18] *Id.*

from, and analyze a conversation to which they are not a party. This is so because Nuance and Microsoft themselves are collecting the voiceprints and content of any conversation. That data is then analyzed by Nuance and Microsoft before being provided to any entity that was a party to the conversation (like Chase Bank).

33. Gatekeeper is used by Nuance and Microsoft on calls between Chase Bank and consumers to ascertain the truth or falsity of statements that consumers make during their telephone conversations with Chase Bank's Contact Center. For example, Gatekeeper assesses consumers' assertions regarding their respective identities (*i.e.*, stating that it is they who are the one calling), as a means of authenticating users.

34. By using Gatekeeper, Nuance and Microsoft, by virtue of collecting a consumer's voiceprint, also collects the content of any conversations between Chase Bank and consumers. Nuance and Microsoft, are required to collect and analyze consumers' answers to Chase Bank's questions in order to verify who those consumers are and the sentiment of consumers.

35. During consumers' calls with Chase Bank's Contact Center, Chase Bank fails to inform consumers, prior to any recording, (i) that third parties, Microsoft and Nuance, are listening in on consumers' confidential communications with Chase Bank, (ii) that third parties, Microsoft and Nuance, are tapping or otherwise making an unauthorized connection with the consumer's telephone conversation using Gatekeeper, (iii) that the content of consumers' confidential communications with Chase Bank are being recorded, collected, intercepted, and analyzed by third parties, Microsoft and Nuance, using Gatekeeper, and (iv) that consumers' voice prints and/or other voice stress patterns will be recorded or examined by third parties, Microsoft and Nuance, using Gatekeeper.

36.     Defendants, likewise, fail to pursue or obtain consent—written or otherwise—from Contact Center callers, prior to allowing Microsoft and Nuance to record, examine, intercept, collect, and analyze consumer's voice prints and/or other voice stress patterns and the content of their confidential conversations with Chase Bank.

37.     Therefore, Defendants' conduct violates the rights of consumers set forth by CIPA §§ 631, 632, and 637.3.

**III.    Plaintiff Chaidez's Experience**

38.     Plaintiff Chaidez is a Chase Bank customer.

39.     Plaintiff Chaidez has called Chase Bank's Contact Center several times, including, most recently, on August 17, 2022.

40.     Plaintiff Chaidez reasonably expected his conversation with Chase Bank to be confidential and only between Plaintiff Chaidez and Chase Bank.  The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Chaidez spoke to Chase Bank on his personal telephone and not in the direct presence of others.

41.     During the call with Chase Bank, Plaintiff Chaidez was asked to make various "yes" or "no" statements in order to respond to questions Chase Bank asked him, or to otherwise provide additional information to Chase Bank.

42.     Unbeknownst to him, when Plaintiff Chaidez called Chase Bank's Contact Center, his telephone was tapped by Nuance and Microsoft using Gatekeeper's voice biometric security solution.

43.     Likewise, when Plaintiff Chaidez gave his responses to Chase Bank's questions, Plaintiff Chaidez's voice print and/or other voice stress patterns, as well as the content of Plaintiff Chaidez's confidential communications with Chase Bank, were intercepted in-transit and captured, recorded, collected, read, analyzed and

stored by Nuance and Microsoft using Gatekeeper's voice biometric security solution.

44. When Plaintiff Chaidez called Chase Bank's Contact Center, Defendants examined his voice, as well as voice print(s) that they had previously stored, to determine the truth or falsity of Plaintiff Chaidez's statements.

45. For instance, Defendants examined the truth or falsity of Plaintiff's assertions that it was, in fact, he, Alfredo Chaidez, who was calling the Contact Center, as Defendants sought to verify Plaintiff Chaidez's identity.

46. Defendants did not procure Plaintiff Chaidez's consent, prior to Nuance and Microsoft recording his voice print and examining his voice, nor prior to Microsoft and Nuance tapping Plaintiff Chaidez's phone or wiretapping his confidential communications with Chase Bank.

47. Plaintiff Chaidez did not give his consent, written or otherwise, to Defendants to have Microsoft and Nuance collect his voice print, to examine or analyze his voice for any purpose whatsoever, nor did Plaintiff Chaidez given his consent, written or otherwise, to Defendants to allow Microsoft and Nuance to wiretap Plaintiff Chaidez's confidential communications with Chase Bank.

48. Plaintiff Chaidez has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendants' violations of CIPA alleged herein.

## CLASS ALLEGATIONS

49. Plaintiff seeks to represent a class defined as all residents of the State of California who had their voice prints or other elements of their conversations recorded by Microsoft and Nuance using Gatekeeper (the "Class").

50. Plaintiff also seeks to represent a subclass defined as all residents of the State of California who had their voice prints or other elements of their conversations

with Chase Bank recorded by Microsoft and Nuance using Gatekeeper (the "Subclass").

51.    The Class and Subclass shall be collectively referred to as the "Classes."

52.    The following people are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

53.    **Numerosity:** The number of persons within the Classes are substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendants' records.

54.    **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between members of

the Classes, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

    (a)    Whether Defendants violated CIPA §§ 631, 632, and 637.3;

    (b)    Whether Defendants sought or obtained prior express consent—written or otherwise—from Plaintiff and the Class; and

    (c)    Whether Plaintiff and members of the Classes are entitled to actual and/or statutory damages for the aforementioned violations.

55.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Classes members, called Chase Bank's Contact Center and had his voice print and/or voice stress patterns, as well as the content of his confidential communications with Chase Bank, recorded, stored, collected, read, analyzed, and/or examined by Microsoft and Nuance.

56.    **Adequate Representation:** Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

57.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by

the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation Of The California Invasion Of Privacy Act,
Cal. Penal Code § 631(a)**

58.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

60.     CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

61.     To establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    13

message, report, or communication while the same is in
transit or passing over any wire, line or cable or is being
sent from or received at any place within this state,
*Or*

Uses, or attempts to use, in any manner, or for any
purpose, or to communicate in any way, any information
so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or
persons to unlawfully do, or permit, or cause to be done any of
the acts or things mentioned above in this section.

62. Microsoft and Nuance's Gateway product is a "machine, instrument,
contrivance, or … other manner" used to engage in the prohibited conduct at issue
here.

63. Microsoft and Nuance are "separate legal entit[ies] that offer[]
'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F.
Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Microsoft and Nuance were third
parties to any communication between Plaintiff and members of the Classes, on the
one hand, and any entity Plaintiff and members of the Classes were communicating
with, such as Chase Bank, on the other. *Id.* at 521.

64. At all relevant times, by using Gateway, Microsoft and Nuance
intentionally tapped, electrically or otherwise, the lines of telephone communication
between Plaintiff and Class Members, on the one hand, and the entities with whom
Plaintiff and Class Members were communicating, on the other hand.

65. At all relevant times, by using Gateway, Microsoft and Nuance
intentionally tapped, electrically or otherwise, the lines of telephone communication
between Plaintiff and Subclass Members, on the one hand, and Chase Bank, on the
other hand.

66.    At all relevant times, by using Gateway, Microsoft and Nuance willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative members of the Classes, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

67.    At all relevant times, by using Gateway, Microsoft and Nuance used the content of Plaintiff's and members of the Classes' communications to analyze Plaintiff's and members of the Classes' voices for identification and emotion, and that content was illegally obtained in violation of the other, aforementioned prongs of CIPA § 631(a).

68.    At all relevant times, Chase Bank aided, agreed with, employed, or otherwise enabled Microsoft and Nuance to implement Gateway and to accomplish the wrongful conduct at issue here.

69.    Plaintiff and members of the Classes did not consent to any of Defendants' actions discussed above.  Nor have Plaintiff or members of the Classes consented to Defendants' intentional access, interception, reading, learning, recording, collection, and analysis of Plaintiff and members of the Classes' communications.

70.    The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

71.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Microsoft and Nuance's violations of CIPA § 631(a).

## COUNT II
### Violation Of The California Invasion of Privacy Act, Cal. Penal Code § 632

72.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

73.    Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendants Microsoft and Nuance.

74.    CIPA § 632(a) prohibits and entity from

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

75.    Microsoft and Nuance's Gateway product is an "electronic amplifying or recording device."

76.    At all relevant times, the communications between Plaintiff and Subclass Members, on the one hand, and Chase Bank, on the other, were confidential.

77.    At all relevant times, Microsoft and Nuance intentionally used Gateway to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members, on the one hand, and Chase Bank, on the other.

78.    When communicating with Chase Bank, Plaintiff and Subclass Members had an objectively reasonable expectation of privacy.  Plaintiff and Subclass Members did not reasonably expect that anyone other than Chase Bank would be on the line, and that other, third party entities, Microsoft and Nuance, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

79.    Plaintiff and Subclass Members did not consent to any of Microsoft and Nuance's actions.  Nor have Plaintiff or Subclass Members consented to Microsoft and Nuance's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

80.    The violation of CIPA § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

81.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Microsoft and Nuance's violations of CIPA § 632(a).

### COUNT III
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 637.3**

82.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

84.    CIPA § 637.3 prohibits any person or entity in the State of California from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation."

85.    Nuance's Gatekeeper voice biometric security solution is a "system which examines or records in any manner voice prints or other voice stress patterns" because it records and examines voice prints and/or other voice stress patterns, including those of the Plaintiff and the Classes.

86.     Microsoft and Nuance used the Gatekeeper voice biometric security solution, as enabled by Chase Bank or other entities with whom Plaintiff and the Classes were communicating, to record and examine the voice prints and/or other voice stress patterns of Plaintiff and the Classes when they called the Chase Bank Contact Center or another call center.

87.     Microsoft and Nuance, through Gatekeeper, recorded and examined Plaintiff's and the Classes' voice prints to determine the truth or falsity of their statements—including, for example, their statement about who they claimed to be. Chase Bank, or other entities with whom Plaintiff and the Classes were communicating, also used the voiceprints recorded by Microsoft and Nuance to determine the truth or falsity of Plaintiff's and the Classes' statements.

88.     Defendants did not obtain prior express written consent from Plaintiff and the Classes to use, examine, or record their voice prints and/or other voice stress patterns for any purpose whatsoever.

89.     The violation of CIPA § 637.3 constitutes an invasion of privacy sufficient to confer Article III standing.

90.     Plaintiff and members of the Classes seek statutory damages of $1,000 for each of Defendants' violation of CIPA § 637.3.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as the representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an order declaring that Defendants' conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For statutory damages of $5,000 for each violation of CIPA §§ 631(a) and 632(a), and $1,000 for each violation of CIPA § 637.3;

(e)    For pre- and post-judgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief; and

(g)    For an order awarding Plaintiff and the Classes their reasonable attorney's fees and expenses and costs of suit.

## **JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Dated:  September 27, 2022        Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Neal J. Deckant*

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorneys for Plaintiff*